[Civ. No. 4555.  Second Appellate District, Division Two.—June 2, 1927.]

LOS ANGELES COUNTRY CLUB (a Corporation), Respondent, v. BOARD OF PUBLIC SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Appellants.

[1] MUNICIPAL CORPORATIONS—CITY OF LOS ANGELES—WATER RATES—ORDINANCES—CONSTRUCTION.—Under section 3 of an ordinance of the city of Los Angeles providing one rate for combined irrigation and domestic water service and another rate for intermittent irrigation, and providing that "irrigation" should apply only to the production of crops for commercial purposes, a country club is entitled to water under the rate for combined irrigation and domestic service, rather than under section 2 providing a higher rate for commercial or domestic service, since the definition of "irrigation" refers only to the rate for intermittent irrigation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Elliot Craig, Judge. Affirmed.

83 Cal. App.—34

The facts are stated in the opinion of the court.

Jess E. Stephens, City Attorney, W. B. Mathews and Trent G. Anderson for Appellants.

Fredericks & Hanna for Respondent.

JOHNSON, J., *pro tem.*—This is an appeal by defendants from a judgment in favor of plaintiff after a hearing upon an agreed statement of facts, and involves the determination of the water rate properly chargeble by the city of Los Angeles for a combined irrigating and domestic service under city ordinance No. 40,342, new series, adopted May 28, 1920. By section 3 of the ordinance a rate is named for combined irrigating and domestic service; and plaintiff insists that it is entitled to the benefit of that rate. Defendants contend, on the other hand, that the rates specified in section 3 for water used in irrigating are available only to those consumers who use the water in the production of agricultural, horticultural, or floricultural crops grown for commercial purposes. So construing the section, defendants imposed on plaintiff the rate specified in section 2 of the ordinance, governing what is called commercial or domestic service, which is a higher rate than that fixed in section 3. In opposition to the defendants, plaintiff takes the position, first, that the benefit of the rate for a combined irrigating and domestic service is not dependent on the production of crops for commercial purposes; and, secondly, that if defendants' construction of section 3 should prevail, an unlawful discrimination would be created between consumers growing crops for commercial purposes and those growing similar crops for noncommercial purposes. Primarily, the controversy is concerned with the proper construction of section 3 of the ordinance.

The system by which water is brought to Los Angeles and supplied to its inhabitants is owned by the city and administered by its Board of Public Service Commissioners, the rates being fixed by the Commissioners by resolution and approved by ordinance of the city council. The city charter provides that such rates shall be so fixed at least every two years, and that, with certain exceptions not material to this controversy, they "shall be of uniform operation as

near as may be, and shall be fair and reasonable, taking into consideration, among other things, the nature of the use, the quantity supplied and the value of the service.''

The plaintiff is a private corporation devoted to social and recreational purposes; and in furtherance of such purposes it acquired and owns a tract of land comprising 400 acres within the city limits. Upon this property plaintiff maintains a clubhouse, with appurtenant buildings, for the use of its members; and upward of 200 acres of the tract are laid out as a golf course and planted with shrubs and lawns, so disposed as to furnish the customary grass greens and fairways.

By the city ordinance adopted May 28, 1920, rates were prescribed varying according to the kind and class of service. A schedule of specific monthly rates for unmeasured service to dwellings, hotels, shops, industrial consumers, and the like is established by section 1. Where service is provided by meters or weirs, the rates are those prescribed by sections 2 and 3. Under section 2, service known as commercial or domestic service, and being meter service other than that provided in section 3, is made subject to a graduated scale of charges, ranging, according to the quantity supplied, from ten cents per hundred cubic feet for the first 10,000 cubic feet or less, to five cents a hundred cubic feet for all in excess of 100,000 cubic feet used in any one month. In addition, there are fixed monthly charges for meters according to their size.

A separate classification is made in section 3, which is the section requiring construction here. That section reads as follows:

' ''Sec. 3. That the rates to be charged for water for combined irrigating and domestic service, through the same meter, under constant pressure, and at the will of the consumer, upon tracts or parcels of land under a single occupancy, aggregating not less than one acre, shall be 2 cents per 100 cubic feet, in addition thereto, a flat rental for meter, depending upon the size of the meter, effective continuously throughout the year, regardless of the irrigating season, or the amount of water consumed, as follows:

|  |  |  |
|---|---|---|
| "1″ | meters | $1.00 per month; |
| "1½″ | meters | $2.00 per month; |
| "2″ | meters | $3.00 per month. |

"For water consumed intermittently for irrigation, for limited periods and under the control of the local water overseer, the charge shall be 1.4 cents per 100 cubic feet, provided that no delivery shall be made, for any period, for a less amount than $2.00; that the water to be served for such intermittent uses shall be at the convenience of the department with reference to the demand of other consumers, and arrangements for such service must be made in advance; provided that the rates prescribed in this section shall only apply to water furnished by gravity; provided, further, that irrigation shall apply only to the production of agricultural, horticultural, or floricultural crops grown for commercial purposes."

Section 3 thus provides rates for two distinct classes of service: One a rate of two cents per 100 cubic feet for combined irrigating and domestic service at will; the other a rate of 1.4 cents per 100 cubic feet for water consumed intermittently for irrigation.

It was stipulated between the parties, and the court found, that the water taken by plaintiff was for a combined irrigating and domestic service, and was furnished to plaintiff by gravity through the same meter, under constant pressure, at the will of plaintiff for use on plaintiff's land constituting a tract under single occupancy of more than one acre. No crops have been grown, however, on plaintiff's lands for commercial purposes.

From the time of the adoption of the ordinance to the end of the year 1921 the charge made to plaintiff for such combined service was at the rate of two cents per 100 cubic feet, with the addition of the monthly meter charge as prescribed by the first paragraph of section 3. On December 2, 1921, however, the following resolution was adopted by the Board of Public Service Commissioners: "Resolved, that the regular schedule of rates for water for commercial or domestic use shall be applied for water furnished to country clubs on all bills for metered service rendered and based on regular meter readings taken on and after January 1, 1922." Pursuant to this resolution the rate applied to the combined service to plaintiff after January 1, 1922, was the commercial or domestic rate fixed by section 2 of the ordinance. The present action is occasioned by the charge so made from May 24 to June 22, 1922, aggregating the sum

of $1,122.10. The charge for the quantity of water supplied, if made under the first paragraph of section 3 as for combined irrigating and domestic service, would amount to only $414.04, exclusive of the fixed meter charge. To prevent the water from being shut off, plaintiff paid under protest the sum of $1,122.10, and then brought this action to recover the difference between that amount and the amount chargeable at the rate of two cents per 100 cubic feet for the combined irrigating and domestic service. The court held that the service in question was not governed by section 2, but was properly chargeable at the rate of two cents per 100 cubic feet designated in section 3; and gave judgment in favor of plaintiff for $699.06, with interest and costs.

It will be observed that the change in the method of charging plaintiff was not due to any change in the ordinance itself, but was brought about by a resolution of the Board of Public Service Commissioners, whereby they undertook to give to section 3 of the ordinance a construction different from that theretofore followed in practice. The construction thus contended for by the defendants depends upon the application to be given to the concluding proviso of section 3, which reads: "Provided, further, that irrigation shall apply only to the production of agricultural, horticultural or floricultural crops grown for commercial purposes." The Commissioners insist that this qualification applies not only to water consumed intermittently for irrigation under the restrictions attached to such service, but also to water for combined irrigating and domestic service at the will of the consumer. The plaintiff urges, on the other hand, that the proviso relates exclusively to restricted intermittent irrigation. Inquiry is thus directed to the intent to be gathered from the language of the section, read in connection with the ordinance as a whole.

The ordinance deals in its first section with flat rates for dwellings and other establishments; and in subdivision 31 it fixes a monthly sprinkling charge of nine-tenths of a cent per front foot for lawns and gardens, where the depth of the lot does not exceed 150 feet, and a proportionate charge for any additional area. Such charge, together with the flat monthly dwelling rate, represents the expense of combined irrigating and domestic service to occupants of residence sites of moderate size. For larger consumers a measured

service is provided under section 2, which, read with the other sections, would seem to dictate the rate for irrigation of somewhat extensive grounds, yet of less than an acre. And it seems logically to follow that householders whose grounds embrace an acre or more would be entitled, under section 3, to the combined irrigating and domestic service rate, even though they are not engaged in the production of vegetables, fruit or flowers for market. It is significant that under the first paragraph of section 3, relating to the combined irrigating and domestic service, the combined service must be through the same meter, and is to be furnished under constant pressure and used at the will of the consumer. When a combined service is furnished through the same meter, there is sound reason for a special rate. (*Hohenthal* v. *Consumers Electric L. & P. Co.* (Mo. P. S. Com.), P. U. R. 1916D, 673.) Again, the meter charge named in the first paragraph is a regular monthly charge, which must be paid throughout the year regardless of seasons or the quantity of water consumed. The water being taken through the same meter, there is no segregation of the quantity used for irrigating from that used domestically, and the water may be drawn when, and used where, the consumer will. Not so, however, with water consumed solely for irrigation under the second paragraph of section 3. No constant supply is then assured. The offer is merely for limited periods, and for intermittent use under the control of the water overseer. Furthermore, such intermittent use must be at the convenience of the department, with reference to the demands of other consumers, and special arrangements for the service must be made with the department in advance. This paragraph is evidently conceived with the idea of supplying consumers who have no need of a liberal daily service, usable at will, but who are engaged in enterprises requiring for their fruition considerable quantities of water from time to time, or during the dry season. The section taken as a whole fulfills a double purpose, and offers distinct kinds of service to two separate classes of irrigators—in the first paragraph a steady service at will to those who are able, by surrounding their households with extensive gardens or lawns, to minister to the amenities of urban life; and in the second paragraph an intermittent and restricted service to those

who require irrigation only for utilitarian purposes. The word "irrigating," as used in the initial paragraph, is not separable from the word "domestic." The service is a combined service, without discrimination as to the quantity employed for household use and the quantity devoted to sprinkling lawns or flower-beds. In its context the phrase "combined irrigating and domestic service" is the direct antithesis of commercial or industrial service. It is with this distinction in mind that the ultimate proviso is to be studied.

[1] The second paragraph of the section contains four provisos. The first two clearly relate to water for intermittent irrigation alone. The third, declaring that "the rates prescribed in this section shall only apply to water furnished by gravity," extends, by its express terms, to both classes of service contemplated by the section. If the concluding proviso were meant to relate likewise to both classes of service, it might more appropriately have been separated merely by a comma from the preceding proviso just quoted. Instead, it is separated by a semicolon, suggestive of an adversative thought, or a change of mental posture; and instead of referring in a definite way to irrigating service in combination with domestic service, it deals solely with utilitarian or commercial irrigation, the language being, "provided, further, that irrigation shall apply only to the production of agricultural, horticultural or floricultural crops grown for commercial purposes." Since the rate for the combined irrigating and domestic service, available at will, is conditioned on supply through the same meter, and without discrimination between the portions used for one purpose rather than the other, the only reasonable inference is that if the concluding proviso had been intended to make the rate of two cents per hundred cubic feet applicable only when the domestic consumer is raising fruits, flowers, or vegetables for market, language would have been used which would have left no doubt of such intent. But far from employing any such language, reference is made simply to "irrigation," the term used at the beginning of the second paragraph; and that term, as there used, is quite alien to the term "combined irrigating and domestic service," as used in the first paragraph.

We are of the opinion, therefore, that the Commissioners were in error in annexing the final proviso of section 3 to the first paragraph of the section, and making the rate fixed in that paragraph available only to a user of combined irrigating and domestic service who is engaged in the production of agricultural, horticultural, or floricultural crops for commercial purposes. Accordingly, the plaintiff was entitled to a continuance of its combined service at the rate fixed in section 3; and the charge of the commercial or domestic rate under section 2 was without justification.

As has been indicated, there is a further contention on the part of plaintiff that if the application given to section 3 by the defendants were to prevail, and the rates there prescribed were to be available only to consumers producing crops for commercial purposes, an unlawful discrimination would be made between consumers growing crops for market, and receiving a combined irrigating and domestic service at the rate fixed in the first paragraph of section 3, and other consumers having the same kind of combined service, and using water for agricultural, horticultural, or floricultural purposes, but not sending their produce to market; and plaintiff argues that in such event it would be entitled to the lower rate for its combined service. The conclusion to which we have come regarding the proper construction of the section makes it unnecessary, however, to pursue the argument on the point of unlawful discrimination.

The judgment is affirmed.

Craig, Acting P. J., and Thompson, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 1, 1927.